**WO**

MDR

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas W. Derello, Jr., | No.   CV-24-03205-PHX-MTL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| R. Thornell, et al., | |
| Defendants. | |

Self-represented Plaintiff Douglas W. Derello, Jr., who is confined in the Arizona State Prison Complex (ASPC) - Lewis, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis. He then filed a Notice of Substitution (Doc. 6) and a Motion for Preliminary Injunction/TRO (Doc. 7).

In a November 22, 2024 Order, the Court denied the deficient Application to Proceed and gave Plaintiff an opportunity to either pay the filing and administrative fees or file a complete Application to Proceed In Forma Pauperis. Plaintiff then filed a "Motion to Explain Plaintiff[']s Errata" (Doc. 9), a Motion to Add to Preliminary Injunction/TRO (Doc. 10), an Application to Proceed In Forma Pauperis (Doc. 11), a Motion to Withdraw (Doc. 13), and two Motions to Inform the Court (Docs. 14 and 15).

The Court will grant the Application to Proceed, order Defendant Suckle to answer Plaintiff's Eighth Amendment claim regarding rats, and dismiss without prejudice the remaining claims and Defendants. The Court will grant Plaintiff's Motion to Add to Preliminary Injunction/TRO but will deny his Motion for Preliminary Injunction/TRO.

**TERMPSREF**

1　The Court will grant Plaintiff's Motion to Withdraw, strike the Notice of Substitution, and
2　take no action on Plaintiff's Motion to Explain and Motions to Inform.

3　**I.　Notice of Substitution, Motion to Explain, and Motion to Withdraw**

4　　In his Notice of Substitution, Plaintiff states that he wants to substitute "Lieutenant
5　Parker" for "Lieutenant John Doe #1." In his Motion to Explain, however, Plaintiff claims
6　he mistakenly submitted the Notice of Substitution "under the wrong case number." In his
7　Motion to Withdraw, Plaintiff indicates he wants to withdraw the Notice of Substitution
8　because it was filed in the wrong case.

9　　The Court will grant Plaintiff's Motion to Withdraw and will direct the Clerk of
10　Court to strike the Notice of Substitution. Because Plaintiff's Motion to Explain does not
11　seek any specific relief relating to this action, the Court will take no action on it.

12　**II.　Motions to Inform the Court**

13　　In his Motions to Inform the Court, Plaintiff notifies the Court that he was "rushed
14　to the emergency room" on December 12 and 19, 2024. These documents are notices, not
15　motions. Because Plaintiff seeks no relief from the Court in these documents, the Court
16　will take no action on them.

17　**III.　Application to Proceed In Forma Pauperis and Filing Fee**

18　　The Court will grant Plaintiff's Application to Proceed In Forma Pauperis. 28
19　U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C.
20　§ 1915(b)(1). The Court will assess an initial partial filing fee of $74.36. The remainder
21　of the fee will be collected monthly in payments of 20% of the previous month's income
22　credited to Plaintiff's trust account each time the amount in the account exceeds $10.00.
23　28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate
24　government agency to collect and forward the fees according to the statutory formula.

25　**IV.　Statutory Screening of Prisoner Complaints**

26　　The Court is required to screen complaints brought by prisoners seeking relief
27　against a governmental entity or an officer or an employee of a governmental entity. 28
28　U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff

has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe [self-represented litigant's] filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a self-represented prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## V.    Complaint

In his Complaint, Plaintiff names as Defendants Arizona Department of Corrections, Rehabilitation & Reentry (ADC) Director R. Thornell; Deputy Warden J. Suckle; Captain H. Vargas; Corrections Officer IV R. Chavez; and Nurse Miller. He seeks monetary damages and injunctive relief.

Plaintiff's single-count Complaint consists of myriad alleged violations of Plaintiff's constitutional rights, including claims of retaliation, claims related to Plaintiff's medical care, claims related to his conditions of confinement, and violations of the Americans with Disabilities Act (ADA).  This laundry list of claims violates the instructions provided with the court-approved form, which state that a plaintiff may only allege "**one violation per count**," and therefore violates Local Rule of Civil Procedure 3.4.[1]  Despite Plaintiff's failure to comply with the instructions, the Court, in its discretion, has reviewed the Complaint as is.

### A.    Retaliation

Plaintiff alleges that on June 21, 2024, he was moved from ASPC-Eyman's South Unit to ASPC-Lewis's Barchey Unit "as a retaliatory move by the South Unit's administration."   (Doc. 1 at 5-6.)[2]   According to Plaintiff, he had "reasonable [ac]commodations for [his] disabilities" at the South Unit and was transferred "out of an ADA facility, contrary to his needs, [which are] clearly identif[ied] in his functional assessment." (*Id*. at 5.)  Plaintiff asserts he was placed in a non-ADA housing unit with no ADA shower, shower chair, or bed, which are "ADA requirements for Plaintiff['s] disabilities." (*Id*. at 5-6.)

Plaintiff claims that when he arrived, he "immediately noticed the hazardous and hostile environment created by [the] administration . . . at Barchey." (*Id*. at 6.)  He asserts (1) a sergeant and an officer told him that they were told he would be arriving and that "prisoners at this unit don[']t play that grievance stuff"; (2) other prisoners told him that officers had "already told them that [Plaintiff] would be arriving"; and (3) a prisoner who had been housed in the same unit as Plaintiff in 2020 noted that Plaintiff "seems to always be at f***in odds with staff concerning grievances" and should "not . . . come here with

---

[1] Local Rule of Civil Procedure 3.4 requires, in part, that "[a]ll complaints . . . by incarcerated persons must be signed and legibly written or typewritten on forms approved by the Court and in accordance with the instructions provided with the forms."

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

that bulls\*\*\*." (*Id*. at 5-6.)  Plaintiff contends he called the retaliatory hotline but received no response and submitted a letter to the Administrative Investigative Unit but did not receive a response.  (*Id*. at 6.)

**B.     Showers**

Plaintiff alleges he was housed in cell 5A and from June 21 until August 6, 2024, he was only able to shower twice and both showers were "painful and awkward." (*Id*. at 7.) Plaintiff claims Defendants Suckle and Chavez were aware[3] that the Barchey Unit was "not ADA compatible," but "deprived Plaintiff of his medical accom[mo]dations" through their "inactions."    (*Id*. at 6.)    Plaintiff asserts that on August 6, Defendant Suckle told maintenance workers to "stop what they were working on" and install an "ADA hose" on the shower in Plaintiff's cell.  (*Id*. at 7.)

**C.     Hazardous Environment**

Plaintiff alleges a non-party and Defendants Thornell, Suckle, and Chavez have "created a host[ile] and hazardous environment through their actions/inactions." (*Id*.)  He asserts that officers have sex with prisoners, prisoners suffer no repercussions when they are found with knives, and multiple inmate-on-inmate assaults are "allowed." (*Id*.)

**D.     Exposure to Smoke**

Plaintiff alleges he does not smoke.  (*Id*.)  He claims Defendants Suckle and Vargas "do not enforce policies to prevent smoking in living areas [or] near living buildings." (*Id*. at 7-8.)    Plaintiff also contends that when he asked administrators to "hold video[]s of smoking under federal preservation rule," Defendant Vargas responded that he was "unable to complete this request." (*Id*. at 8.)  He asserts that when he asked if a non-smoker could be housed next to him, Defendant Chavez explained that "there is no way to guarantee that." (*Id*.)  Plaintiff contends that when he indicated on July 18, 2024, that the unit was knowingly violating Arizona Revised Statutes section 36-601.01 and he was "medically

---

[3] Plaintiff appears to allege Defendants Suckle and Chaves were "aware" because Plaintiff filed a complaint and motion for preliminary injunction in another action that "refer[e]nced issues in this filing" but "did not list [these individuals] as Defendants." (*Id*. at 6-7.)

affected" by smoke, Defendant Chavez wrote that there "is a policy against smoking or the use of tobacco." (*Id*. at 8-9.) He asserts the policy is "a security for those who violate this policy" and Defendants Chavez, Suckle, and Vargas "loosely enforce [the policy] through inactions." (*Id*. at 9.) He claims he has suffered headaches and breathing problems and was "hit twice in the mouth for complaining to prisoners [who were] smoking around [him]." (*Id*.)

### E.    Medical Issues

Plaintiff alleges Defendant Miller knows Plaintiff (1) has severe sleep apnea and uses a continuous positive airway pressure (CPAP) device; (2) has a "ragge[d]y" CPAP mask and has been waiting for a replacement since March 2024; (3) is biting his tongue, has nosebleeds and an "irritated throat," and experiences "sleepless and restless nights" from his CPAP mask, which no longer seals and should be replaced every 30 to 90 days; and (4) was scheduled for three urgent off-site medical appointments that were "interfere[]ed with d[ue] to the required medical wheelchair van not arriving to transport Plaintiff." (*Id*. at 9-10.) Plaintiff asserts that due to Defendant Miller's "inactions," he is "suffering from [no] CPAP ma[s]k and other pr[e]scribed medical equipment," such as "medical" shoes and a "rollator walker." (*Id*. at 10.) He also claims he is "at imminent risk of irreparable harm" because "sleep apnea can cause sudden cardiac death if not treated with the use of a CPAP machine every time Plaintiff sleep[s]." (*Id*. at 10-11.)

### F.    Acts by Non-Party Lieutenant

Plaintiff alleges he spoke with a non-party lieutenant on July 17, 2024, about getting a shower. (*Id*. at 11.) He claims the lieutenant told Plaintiff he was not getting a shower chair and, moreover, the lieutenant was "taking all the desk chairs off the run." (*Id*.) Plaintiff asserts that later in the day, prisoners told Plaintiff that the lieutenant had "told them Plaintiff is a provoker of agitation that irritate[s] staff." (*Id*.) He contends the lieutenant had "animosity toward Plaintiff that was hard to fathom." (*Id*.) Plaintiff asserts that on August 4, 2024, the lieutenant handcuffed Plaintiff's aide because the aide had asked the lieutenant "about his negativity toward[] Plaintiff." (*Id*.) Plaintiff alleges that

on August 5, 2024, he heard the lieutenant "talk de[gra]ding[ly] about Plaintiff to other prisoners," telling them that Plaintiff had been "r[u]n out" of ASPC-Eyman and now wanted to complain about "these living conditions." (*Id*. at 11-12.) He claims that on August 12, 2024, the lieutenant "tried to turn some prisoners against [Plaintiff]" by claiming Plaintiff was "trying to have prisoners moved out [of] the only [air-conditioned] building to make it for ADA[]s." (*Id*. at 12.) Plaintiff asserts that based on the lieutenant's comments, Plaintiff could no longer try to move from his building, which "had sweltering heat," to the air-conditioned building, even though he had diabetes and medical devices and should have been placed in the air-conditioned building. (*Id*.)

**G.     Rats**

Plaintiff contends Defendants Suckle and Vargas were deliberately indifferent to Plaintiff's personal safety. (*Id*. at 12-13.) He alleges he complained on August 13, 2024, about rats eating prisoners' food and identification cards and "nothing being done." (*Id*. at 13.) Plaintiff claims Defendant Vargas responded that this was inaccurate, "pest control" had been there a week before, there had been no sign of rats, and they had only seen evidence of desert packrats, which are not rats and are a protected species that "cannot be eradicated." (*Id*.) Plaintiff claims Defendant Vargas further stated that "b[r]ush guards" had been ordered for the doors. (*Id*.)

Plaintiff alleges he wrote Defendant Suckle on September 6, 2024, explaining that Defendant Vargas claimed to have ordered the brush guards. (Id. at 13-14.) He claims Defendant Suckle responded that "projects [had been] notified to add door sweeps." (*Id*. at 14.) Plaintiff asserts he wrote Defendant Suckle again on September 25, explaining that "the problem is now a[] rat infestation"; prison staff were "buy[ing] sticky traps for the control room/CO III office; a rat had entered Plaintiff's area on September 24, 2024, and ate holes in Plaintiff's shirt; and Defendant Suckle would be "responsible" if Plaintiff was bitten. (*Id*.) He contends Defendant Suckle never responded. (*Id*.)

Plaintiff alleges the door sweeps were not installed and a rat bit him on October 3, 2024, while sitting in his wheelchair. (*Id*.) He contends he "started kicking the locker with

his bare foot," which caused his foot to "sw[e]ll up real[ly] bad[ly]." (*Id.*)  Plaintiff alleges he saw medical personnel on October 7 and 10 and was given cephalexin.  (*Id.* at 14-15.)  He claims a nurse practitioner also ordered naproxen on October 30.  (*Id.* at 15.)

**H.    Exercise**

Plaintiff alleges Defendants Thornell, Suckle, and Chavez have "no policy" regarding exercise for ADA inmates and Plaintiff has been housed at the Barchey Unit "without being allowed to exercise" in the same manner as non-ADA inmates.  (*Id.*)  He claims non-ADA inmates have "cross fit[]ness class" and exercise and recreation from 5 a.m. until 8 p.m., but ADA inmates have "no designated exercise equipment or workout stations."  (*Id.*)  He asserts that between 5 a.m. and 8 p.m., he is "just parked in his wheel[]chair out [of] the way."  (*Id.*)

Plaintiff asserts he is an "inmate with disabilities" as defined by the ADA, is grossly overweight from "immobility and lack of safe access to programs," is diabetic, and has painful edema and diabetic neuropathy.  (*Id.* at 15-16.)  He contends he and other ADA inmates "need exercise."  (*Id.* at 16.)

Plaintiff claims Defendant Thornell, in his official capacity, is required by the ADA to "provide incarcerated individuals with disabilities equal access to the prison facilities."  (*Id.*)

**VI.   Discussion**

Although self-represented pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action.  *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.  *Id.*

To state a valid claim under § 1983, plaintiffs must allege a specific injury because of specific conduct of a defendant and show an affirmative link between the injury and the defendant's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the

supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

It is insufficient to simply make vague and conclusory allegations against a group of Defendants, without any factual specificity as to what any particular Defendant did or failed to do. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (upholding dismissal of complaint that referred to all defendants "generally and categorically" because the plaintiff had failed to "'allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").

## A.    Retaliation

To the extent Plaintiff alleges he was moved from the South Unit to the Barchey Unit "as a retaliatory move by South Unit's administration," He has failed state a claim because he has not sued any individuals employed at the South Unit. To the extent Plaintiff is raising a retaliation claim based on the "hazardous and hostile environment created by [the] administration . . . at Barchey," he has simply made vague and conclusory allegations against a group, without any factual allegations against a particular Defendant. Thus, the Court will dismiss without prejudice Plaintiff's retaliation claims.

**B.    Conditions of Confinement**

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test.  "[T]he deprivation alleged must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted).  Next, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted).  Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835.  In defining "deliberate indifference" in this context, the Supreme Court requires a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

**1.    Showers**

Plaintiff alleges Defendants Suckle and Chavez were aware that the Barchey Unit was not ADA-compatible, but "deprived Plaintiff of his medical accom[mo]dations" through their "inactions."  This claim is vague and conclusory.  Plaintiff makes no specific allegations against Defendant Chavez.  His only specific allegation regarding Defendant Suckle is that Suckle told maintenance workers to install an ADA hose on the shower in Plaintiff's cell.  This does not suggest Defendant Suckle was deliberately indifferent to Plaintiff's health or safety.  Thus, the Court will dismiss without prejudice Plaintiff's shower claim.

**2.    Hazardous Environment**

Plaintiff's allegation that a non-party and Defendants Thornell, Suckle, and Chavez "created a host[ile] and hazardous environment through their actions/inactions" is nothing more than a vague and conclusory allegation against a group of Defendant, without any factual specificity as to what any particular Defendant did or failed to do.  Thus, the Court will dismiss without prejudice Plaintiff's "hazardous environment" claim.

### 3.    Exposure to Smoke

The Supreme Court in *Helling v. McKinney*, 509 U.S. 25 (1993), set out the constitutional framework for Eighth Amendment claims about involuntary exposure to environmental hazards.  *Helling* holds that a prisoner plaintiff can state an Eighth Amendment claim by alleging he was exposed to levels of environmental tobacco smoke that "pose[d] an unreasonable risk of serious damage to his future health." *Id.* at 35.  The Eighth Amendment, however, does not require a smoke-free environment; it requires only that a prisoner is not exposed to unreasonably high levels of tobacco smoke. *Id.*

Plaintiff alleges Defendants Suckle and Vargas "do not enforce policies to prevent smoking in living areas [or] near living buildings" and Defendants Chavez, Suckle, and Vargas only "loosely enforce" a "policy against smoking or the use of tobacco."  However, he does not allege any facts to support that he was exposed to unreasonably high levels of environmental tobacco smoke.  *See Helling*, 509 U.S. at 28 (plaintiff was assigned a cellmate who smoked five packs of cigarettes a day); *Jones v. Neven*, 678 F. App'x 490, 493 (9th Cir. 2017) (plaintiff failed to adequately allege he was "exposed to unreasonably high levels" of environmental tobacco smoke when he only alleged his cellmate was a "heavy smoker," which "lacks the specificity reflected in *Helling*"); *Hart v. Sec'y, Fla. Dep't of Corr.*, 2018 WL 4472887, *3 (N.D. Fla. Aug. 13, 2018) (concluding prisoner failed to show he was being exposed to unreasonably high levels of environmental tobacco smoke where prisoner "alleged no facts indicating how much smoke he [was] subjected to, how many persons [were] smoking near him, or when persons smoke[d] around him," it was "unknown whether smoking is an isolated incident or daily occurrence," and there were "no facts clarifying whether persons smoke[d] outside or inside the dormitory"), *R. & R. adopted*, 2018 WL 44717747 (N.D. Fla. Sept. 18, 2028).

In addition to the lack of a constitutional right to a smoke-free environment, the mere violation of ADC's no-smoking policy or state law prohibiting smoking does not state a constitutional violation.  *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) ("state departmental regulations do not establish a federal constitutional violation.")

1  (emphasis in original); *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981) (only federal
2  rights are protected by § 1983, "[v]iolations of state law alone are insufficient").

3      Thus, the Court will dismiss without prejudice Plaintiff's claim regarding his
4  exposure to smoke.

5              **4.    Acts by Non-Party Lieutenant**

6      Plaintiff has failed to state a claim regarding the lieutenant's actions because this
7  individual is not a Defendant in this action.  Thus, the Court will dismiss Plaintiff's claim
8  regarding the actions of the non-party lieutenant.

9              **5.    Rats**

10                 **a.    Defendant Vargas**

11     Plaintiff alleges that after he complained about rats eating prisoners' food and
12  identification badges and nothing being done, Defendant Vargas responded that pest
13  control had been there a week before; there was only evidence of packrats, not rats; and
14  brush guards had been ordered for the doors.  These allegations do not support a conclusion
15  that Defendant Vargas acted with deliberate indifference to Plaintiff's health or safety.
16  Thus, the Court will dismiss without prejudice Plaintiff's claim against Defendant Vargas
17  regarding the rats.

18                 **b.    Defendant Suckle**

19     Liberally construed, Plaintiff has stated an Eighth Amendment claim against
20  Defendant Suckle regarding his failure to take action after Plaintiff notified him on
21  September 25, 2025, that there was a rat infestation, prison staff were buying traps for staff
22  areas, and a rat had recently entered Plaintiff's cell and ate holes in Plaintiff's shirt.  The
23  Court will require Defendant Suckle to answer this portion of the Complaint.

24              **6.    Exercise**

25     In addition to the fact that Plaintiff has simply made vague allegations against a
26  group, he also has failed to allege facts to support that any particular defendant was acting
27  with deliberate indifference to his health or safety.  And his allegation that there are "no
28  designated exercise equipment or workout stations" for ADA inmates is entirely vague; he

1    does not indicate why he cannot use the same exercise equipment and workout stations

2    provided to non-ADA inmates; whether he requested a specific Defendant provide exercise

3    equipment he could use; and, if he did, what response he received and how that response

4    rose to the level of deliberate indifference to Plaintiff's health or safety. Thus, the Court

5    will dismiss without prejudice Plaintiff's Eighth Amendment exercise claim.

6       **C.    Medical Care**

7       Not every claim by a prisoner relating to inadequate medical treatment states a

8    violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show

9    (1) a "serious medical need" by demonstrating that failure to treat the condition could result

10   in further significant injury or the unnecessary and wanton infliction of pain and (2) the

11   defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th

12   Cir. 2006).

13      "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d

14   1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both

15   know of and disregard an excessive risk to inmate health; "the official must both be aware

16   of facts from which the inference could be drawn that a substantial risk of serious harm

17   exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate

18   indifference in the medical context may be shown by a purposeful act or failure to respond

19   to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*,

20   439 F.3d at 1096. Deliberate indifference may also be shown when a prison official

21   intentionally denies, delays, or interferes with medical treatment or how prison doctors

22   respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976);

23   *Jett*, 439 F.3d at 1096.

24      Deliberate indifference is a higher standard than negligence or lack of ordinary due

25   care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross

26   negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F.

27   Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458,

28   460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice"

do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Plaintiff alleges Defendant Miller was aware that Plaintiff had sleep apnea, used a CPAP machine, was waiting for a replacement mask, was experiencing sleepless and restless nights and other symptoms due to his mask, and had been unable to attend offsite medical appointments because the medical wheelchair van did not arrive to transport Plaintiff. However, Plaintiff does not allege Defendant Miller was responsible for the delay in receiving a replacement mask or the wheelchair van not arriving to transport Plaintiff. Nor does he allege he requested Defendant Miller take some specific action regarding the mask or the van, and, if he did, what he requested, what response Defendant Miller provided, and how that response rose to the level of deliberate indifference. Absent more, Plaintiff's allegations are simply too vague and conclusory to state a claim against Defendant Miller regarding Plaintiff's medical care. Thus, the Court will dismiss without prejudice the medical care claim against Defendant Miller.

### D. ADA

Plaintiff appears to be raising a claim under the ADA based on ADA inmates not having "designated exercise equipment or workout stations." He has failed to state a claim.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state an ADA claim, a plaintiff must demonstrate that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1021 (9th Cir. 2010) (quoting *McGary v. City of Portland,* 386 F.3d 1259, 1265 (9th Cir. 2004)).

Plaintiff's allegations are entirely vague. As previously noted, Plaintiff does not allege why he needs exercise equipment and workout stations that are "designated" for ADA inmates. Nor is it clear that he requested and was denied these accommodations, to whom he directed his requests, or that his requests were denied. Thus, he has failed to allege he was discriminated against because of his disability. Thus, the Court will dismiss without prejudice Plaintiff's ADA claim based on ADA inmates not having "designated exercise equipment or workout stations."

## VII.    Motion to Add and Motion for Preliminary Injunction/TRO

In his Motion to Add, Plaintiff seeks to add a factual assertion to his Motion for Preliminary Injunction/TRO. The Court will grant the Motion to Add to the extent the Court will consider the additional factual information when reviewing Plaintiff's Motion for Preliminary Injunction/TRO.

Whether to grant or deny a motion for a temporary restraining order (TRO) or preliminary injunction is within the Court's discretion. *See Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132-33 (9th Cir. 1979). To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden of proof on each element. *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

An injunction or restraining order is appropriate to grant "intermediate relief of the same character as that which may be granted finally," but relief is not proper when it is requested on matters lying wholly outside the issues in the suit. *DeBeers Consol. Mines v. United States.*, 325 U.S. 212, 220 (1945). To obtain injunctive relief, the party "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).

In his Motion for Preliminary Injunction/TRO, Plaintiff seeks to be "placed at a more accommodating ADA prison" and "transported to appointments." Because the Court has dismissed Plaintiff's claims regarding these issues, Plaintiff has failed to show he is likely to succeed on the merits of those claims. Thus, the Court will deny Plaintiff's Motion for Preliminary Injunction/TRO.

**VIII.  Warnings**

**A.    Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

**B.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.    Copies**

Because Plaintiff is currently confined in an ADC Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that

this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court.  Plaintiff is not required serve Defendant with copies of every document or provide an additional copy of every document for the Court's use.

**If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendant, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court.  *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

   **D.**  **Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)  Plaintiff's Application to Proceed In Forma Pauperis (Doc. 11) is **granted**.

(2)  As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $74.36.

(3)  Plaintiff's Motion to Withdraw (Doc. 13) is **granted**.  The Clerk of Court must **strike** Plaintiff's Notice of Substitution (Doc. 6).

(4)  Plaintiff's Motion to Add to Preliminary Injunction/TRO (Doc. 10) is **granted** to the extent the Court will consider the information in that document.

(5)  Plaintiff's Motion for Preliminary Injunction/TRO (Doc. 7) is **denied without prejudice**.

. . . .

. . . .

(6)     The Court will take **no action** on Plaintiff's Motion to Explain (Doc. 9) and Motions to Inform the Court (Docs. 14 and 15) because these documents are notices, not motions, and seek no relief from the Court.

(7)     Defendants Thornell, Chavez, Vargas, and Miller are **dismissed** without prejudice.

(8)     If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be filed on the court-approved form and retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(9)     Defendant Suckle must answer the Eighth Amendment claim regarding rats.

(10)    The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendant Suckle.

(11)    Plaintiff must complete[4] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(12)    If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on Defendant Suckle within 60 days of the filing of this Order, the action may be dismissed.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(13)    The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

. . . .

. . . .

. . . .

---

[4] If a Defendant is an ADC officer or employee, Plaintiff must list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at ADC's Central Office unless the officer or employee works there.

TERMPSREF

- 18 -

(14)    The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendant must include a copy of this Order.

(15)    If Defendant Suckle agrees to waive service of the Summons and Complaint, he must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(16)    The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

      (a)    personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

      (b)    within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

. . . .

1    (17)    Defendant Suckle must answer the relevant portion of the Complaint or

2    otherwise respond by appropriate motion within the time provided by the applicable

3    provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

4    (18)    This matter is referred to Magistrate Judge James F. Metcalf pursuant to

5    Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as

6    authorized under 28 U.S.C. § 636(b)(1).

7    Dated this 28th day of April, 2025.

8

9

10    _____
        Michael T. Liburdi
11    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28